PRATT, J.
(concurring).—This controversy relates to what has been called, but what seems to me to be rather proved to be, a right of way claimed by plaintiff over lands which defendant ■claims under alease. The plaintiff’s claim is founded upon the act of the trustees under the will of Samuel Wood, the common .■source of title. Wood owned all the land in his lifetime, and ■made and filed a map indicating that he contemplated opening certain streets or roads through his land. The trustees conveyed a part of the land owned by their testator to plaintiff in 1895, bounding the same in part by a highway known as “ Brower Point Road,” which, on the map, was called “Franklin Avenue." The first point in the description in this conveyance is at a point on this road (Franklin avenue) “opposite the northerly line of Neptune avenue as now owned.” The parties to that grant plainly contemplated the opening of other roads or streets; for it contained a ¡provision that if the grantors, within two years after their grant, ■should decide to extend said Neptune avenue through the preni.áses conveyed, they should hqve the right to do so, by conveying *844 to plaintiff an equivalent amount of other equally desirable land to compensate for that so taken for the said street, and complying with other terms. Thereafter, and within said two years, the grantors decided to extend this Neptune avenue, and made arrangements with'plaintiff, pursuant to the reservation in his deed, for that purpose. They accomplished this object by means of two instruments. One of them was an agreement under seal, which provided the terms of the opening of the road through the land conveyed to plaintiff in 1885, and specified the land which the trustees should convey to him in lieu of that which they took for the extension of Neptune avenue. The other was a new conveyance of land in lieu of that taken for the Neptune auenue extension. This agreement clearly shows that the parties contemplated that the roads which they there specified should ultimately become highways, but that, in view of the fact that the offer of dedication for that purpose must be accepted by the public before the roads should become lawful highways, they provided that each should have “full ahd unrestricted right and privilege of access to and uses of all! and every part of said proposed roads and ways, and all parts thereof, for access to and egress from any and all of their own lands lying near the same, and for the use of their survivors and grantees, * * * without waiting for acceptance by the town authorities.” The new proposed road was indicated on the said map, and appropriated part of plaintiff’s land, leaving the balance included in the angle formed by the old Brower Point road (Franklin avenue) and the proposed road. The land appropriated from plaintiff’s lot was marked “ B ” on the map. The proposed new road then ran on beyond plaintiff’s land, and on one side of premises owned by the trustees; this extension being marked “A” on the map. The two strips, A and B furnished means of access to one of the trustees’ lots which was otherwise inaccessible from the old Brower Point road (Franklin avenue). The plaintiff at that time did not own any land along the strip A, and the letter of the latter clause of the agreement would seem to limit the use of the strips A and B, until acceptance b,y the public, to the purposes of “access to and egress from any and all their own lands lying near the same.” Strictly speaking, this would seem to limit the plaintiff’s use of the proposed new road to the part marked “B,” but would give to the trustees the right to use both B, and its extension, A. But I do not think that is the true construction in view of other clauses of the agreement. The plaintiff had the right, under this agreement, to “open, for the purposes of a public highway, having a width of sixty feet, a road * * * designated on the annexed diagram by the letter lA.’ ” In other words, the plaintiff thereby acquired just as good right to open the strip A, and keep it open, through the land of the trustees, as they had to open the strip B through his land, and keep it open. It is quite too much to assume that he should not, under these circumstances, have the right to use the strip A, although he did not, at that time, own land lying thereon. Non constat he then contemplated doing just what he subsequently did do, namely, buying *845 land from other parties along the strip A, opposite the trustees’ land. This was followed by his actual use for several years of the entire strips, A and B, for access to his subsequent purchase, and evinces a practical construction between the parties to the agreement of his rights thereunder. We therefore reach the conclusion that one of the objects of this so-called road agreement was to give plaintiff and his grantees a right of way over the entire strips, A and B, at his will and pleasure, and.especially so after his subsequent purchase along the strip A.
We may now obtain a clearer view of defendant’s contention that this road agreement was not within the power of the trustees under the will of their testator. I think it was within those powers for two reasons. In the first place, this road agreement was really a part of the original grant by the trustees to plaintiff. It was made in pursuance of a reservation contained in that grant, -and the trustees had just as much right to exercise their option, thus reserved, and agree with plaintiff upon the terms thereof, as they bad to make the grant itself. The latter right is not controverted. In the next place, the trustees evidently deemed that this proposed road, when accepted by the public, and the private right of way thus in the meantime obtained by them over plaintiff’s land from the junction of Neptune avenue and the old Brower Point road (Franklin avenue) to their lot lying along the strip A, was beneficial to the trust estate. We have no difficulty in seeing that it was beneficial to the estate. Certainly, the learned trial judge was justified in such a finding by the evidence before him, and that would seem to satisfy the requirements of the will.
We do not understand that defendant’s landlord, or the defendant himself, each of whose rights are subsequent to the plaintiff’s, •claim any right under the registry act. The only ground upon which the defendant claims the right to shut up this strip, A, are the want of power in the trustees to make this road agreement, and a theory of abandonment of the plaintiff’s right of way. I do not think the theory of abandonment is well founded.